## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VIGILANT INSURANCE COMPANY,

     Plaintiff,

         v.

AMERICAN MECHANICAL SERVICES
OF MARYLAND, L.L.C.,

     Defendant.

Civil Action No.  11-400 (JEB)

## MEMORANDUM OPINION

Plaintiff Vigilant Insurance Company insured the property of the law firm Venable, LLP

in the District of Columbia.  After Defendant American Mechanical Services of Maryland,

L.L.C. caused a fire that damaged that property, Vigilant paid Venable under the policy.  Now

subrogated to Venable's rights, Vigilant brings the current action seeking to recoup from

Defendant its payments to Venable.  As Vigilant has ignored a mandatory arbitration clause in

Venable's contract with AMS, it cannot recover.

I.      **Background**

The Amended Complaint alleges that Plaintiff insured Venable's property at 575 7th St.,

N.W., in the District of Columbia.  Id. at 2.  On Dec. 5, 2008, Defendant's employees were

working to repair the HVAC air-handling system at the firm.  Id.  The welding torch they were

using "ignited nearby combustible materials," causing a fire that severely damaged Venable's

property.  Id.  Pursuant to the insurance policy, Plaintiff paid Venable over $75,000 to repair the

damage.  Id.  Vigilant then filed the current action to recover from AMS what it had paid out to

Venable. Defendant has now moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.[1]

## II.      Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

---

[1]      In considering this Motion, the Court has reviewed Plaintiff's Amended Complaint, Defendant's Motion to Dismiss, Plaintiff's Opposition, and Defendant's Reply.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). "Until a movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). They are required to provide evidence that would permit a reasonable jury to find in their favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovants' evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. Analysis

In moving to dismiss or for summary judgment, Defendant argues that Vigilant's claim is "barred . . . because neither Venable nor Vigilant initiated a demand for arbitration within the one (1) year contract limitation period from the date when the dispute arose." Mot. at 2. Vigilant counters that it has abided by the contract and that, in any event, the doctrines of estoppel and waiver defeat Defendant's argument. See Opp. at 5.

Before addressing the merits of the parties' positions, the Court must deal with two preliminary matters. First, neither side contests the applicability of District of Columbia law to this diversity action. This makes sense, given that the injury, the conduct causing the injury, and the relationship between the parties are all centered in the District. See Jaffe v. Pallotta Teamworks, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (setting out choice-of-law test). Second, Plaintiff never argues that summary judgment is procedurally premature at this juncture of the case. For instance, Vigilant does not attach a Rule 56(d) affidavit showing it cannot yet present facts, and it does not otherwise contend that additional discovery is necessary before the Court

can appropriately rule on Defendant's Motion.  Plaintiff's argument focuses on the merits of the

Motion, and that is where the Court will turn.

Having paid Venable under the policy, Vigilant now stands in Venable's shoes in seeking

to recover that payment from AMS; it may recover only what Venable could have recovered.

See Water Quality Ins. Synd. v. United States, 522 F. Supp. 2d 220, 231 n.8 (D.D.C. 2007) ("an

insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only

such rights as the insured possesses") (quoting Quarles Petroleum v. United States, 551 F.2d

1201, 1207 (Ct. Cl. 1977)).  That recovery is determined by the contract between Venable and

AMS.  As Vigilant itself points out, "Defendant's work at the subject premises was done

pursuant to a 'Project Agreement' between it and [Venable]."  Opp. at 1.  Both Vigilant and

AMS agree that that Agreement contained an Alternative Dispute Resolution provision, which

stated:

> Alternative Dispute Resolution - If a dispute arises out of or relates
> to this Agreement, the parties agree that senior management shall
> attempt in good faith to settle the dispute to the satisfaction of all
> parties. If the parties are unable to settle the dispute within thirty
> (30) days from the time it arises, the parties agree to submit the
> dispute to arbitration. Upon expiration of the thirty-day period, the
> aggrieved party shall serve a written demand for arbitration upon
> the opposing party and the American Arbitration Association, and
> the parties shall select a mutually acceptable arbitrator with
> knowledge of the commercial construction and/or service industry.
> Arbitration shall occur in the metropolitan area in which
> the work was performed and shall be in accordance with the
> Commercial Arbitration Rules of the American Arbitration
> Association, as such rules shall be in effect at the time of
> arbitration. The decision of the arbitrator shall be final,
> conclusive and binding upon all parties and judgment may be
> entered upon the award in the highest state or federal court having
> jurisdiction over the dispute. The arbitrator shall award the
> prevailing party all costs and expenses of such arbitration,
> including without limitation, reasonable attorneys' fees. Failure to

> serve a demand for arbitration within one (1) year from the date the
> dispute arises shall be deemed to be a waiver of the aggrieved
> party's claim.

Mot., Exh. A (Project Agreement) at 2 (emphasis added); Opp. at 2 n.1. Defendant argues that

Vigilant's failure to comply with this provision requires dismissal.

Vigilant does not contend here that the ADR provision is ambiguous or that it does not

apply or that the Court should not follow it. See Nkpado v. Standard Fire Ins. Co., 697 F. Supp.

2d 94, 98 (D.D.C. 2010) ("Contractual provisions limiting the period within which insurance

policy holders may validly initiate a lawsuit are generally enforceable under District of Columbia

law." (internal quotation marks and citation omitted)). Instead, Plaintiff makes two central

arguments why Defendant's Motion should be denied. First, Vigilant contends that it notified

Defendant's counsel on Dec. 19, 2008, of Vigilant's claim, including Vigilant's "theory of

liability," "the scope of Vigilant's damages," and its intent to seek monetary relief from AMS.

Opp. at 2. Such notice, it maintains, is sufficient to discharge any obligation it had under the

ADR clause to initiate arbitration. Id. at 5-6. Second, even if Vigilant did not comply with the

terms of the ADR clause, "Defendant's conduct waived any right it had to compel resolution of

this dispute through arbitration." Id. at 7. The Court will address each in turn.

A. Notice

Although Plaintiff, in seeking to defeat Defendant's Motion, offers no actual evidence –

instead, it relies solely on allegations in its Opposition – the Court will, to give Plaintiff the

benefit of all inferences, credit these allegations as facts. According to the Opposition, after

Vigilant initially notified Defendant of its claim on Dec. 19, 2008, the "conversation between

Vigilant and Defendant, which began shortly after the Fire, continued over the course of the next

several months." Id. at 3. In fact, "[b]etween December 19, 2008, and May 13, 2009, there were

some twenty-three exchanges between Vigilant and Defendant regarding various aspects of Vigilant's claim against Defendant." Id. While Plaintiff concedes it never made a written demand for arbitration and did not file this suit until 2011, it argues that its contacts with AMS suffice to comply with the ADR clause since the American Arbitration Association "rule governing initiation of arbitration is clearly designed to provide the opposing party with notice of the nature of the claim against it." Id. at 5-6.

Such an argument is belied by the ADR clause itself. Compliance is not achieved through mere oral notice to the other side of a claim. Instead, the clause specifies that "the aggrieved party shall serve a written demand for arbitration upon the opposing party and the American Arbitration Association." Project Agreement at 2. Plaintiff here neither served a written demand for arbitration nor notified the AAA in any way. Further, the AAA rules Plaintiff cites actually favor Defendant. Under the provision entitled "Initiation under an Arbitration Provision in a Contract," "[t]he initiating party . . . shall, within the time period, if any, specified in the contract(s), give to the other party . . . written notice of its intention to arbitrate . . . . [¶] The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract . . . ." AAA Com. Arb. Rule R-4(a)(i)-(ii). Not only does this rule oblige compliance with limitations periods in contracts, but it also requires written notice to the other party and filings at AAA offices. Again, Plaintiff has not complied with either of these provisions.

As the Court must enforce this unambiguous contractual limitations period agreed upon by two sophisticated parties, it cannot find that Vigilant's notice to or discussions with Defendant's counsel constitute the written arbitration demand that the ADR clause requires. See DLY-Adams Place, LLC v. Waste Management of Maryland, LLC, 2 A.3d 163, 166 (D.C. 2010)

("summary judgment is appropriate where a contract is unambiguous since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence" (internal quotation marks, citation, and footnote omitted)).

B. <u>Waiver</u>

Plaintiff next maintains that, even if it did not comply with the ADR clause, Defendant has waived any reliance upon it because Defendant has "acted inconsistently with its alleged right to compel arbitration over an extended period prior to litigation in this matter." Opp. at 7. More specifically, Plaintiff alleges that in Defendant's numerous exchanges with Vigilant, it "never indicated it intended to compel arbitration of this matter." <u>Id.</u> at 8. In addition, after the filing of the Complaint in this case, "Defendant specifically requested Vigilant make certain changes to the caption of the Complaint," instead of raising the ADR clause. <u>Id.</u>

The first argument is essentially that Defendant, by participating in negotiations with Vigilant after the fire, lulled Vigilant into failing to protect its rights. As such, it is estopped from relying on the ADR clause. <u>See</u> <u>Martinez v. Hartford Cas. Ins. Co.</u>, 429 F. Supp. 2d 52, 57 (D.D.C. 2006) ("'A defendant is estopped from raising [a limitations period] as a defense if that defendant has done anything that would tend to lull the plaintiff into inaction and thereby permit the [limitations period] to run against him.'" (quoting <u>Partnership Placements, Inc. v. Landmark Ins. Co.</u>, 722 A.2d 837, 842 (D.C. 1998))). Yet simply participating in negotiations does not constitute the "lulling" Vigilant asserts. <u>See</u> <u>id.</u> at 58 ("to be estopped from raising the contractual limitations period as a bar to the plaintiff's claims, the defendant must have made an 'an <u>affirmative inducement</u> to [the] plaintiff[] to delay bringing action'" (quoting <u>Bailey v. Greenberg</u>, 516 A.2d 934, 937 (D.C. 1986)) (emphasis added)); <u>Nkpado</u>, 697 F. Supp. 2d at 98

(D.C. courts have narrowly interpreted principle of estoppel based on "lulling"). No affirmative inducement is established here.

During negotiations, furthermore, the "defendant's failure to call the plaintiff's attention to the Policy's expressly delineated limitations provision is surely not such an affirmative inducement." Martinez, 429 F. Supp. 2d at 58. Nor does Plaintiff allege that AMS ever actually conceded liability. See Nkpado, 697 F. Supp. 2d at 98 ("Under District of Columbia law, the general rule is that an insurance company is not deemed to have waived a contractual limitations period unless the company has conceded liability and some discussion of a settlement offer has occurred." (internal quotation marks and citation omitted)). In this case, finally, the "lulled" party is not some unsophisticated employee taken advantage of by his employer or a naive insured manipulated by his insurer; on the contrary, Plaintiff is an insurance company that well knows how limitations in agreements operate. No reasonable jury, therefore, could find that Defendant lulled Plaintiff into inactivity.

Plaintiff next points out that, after its filing of the Complaint, Defendant in an email "did not raise the arbitration clause, but, instead, responded to that process." Opp. at 8. In other words, Defendant's actions manifest waiver because it "did not intend to compel arbitration of this dispute." Id.; see Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987) (right to arbitration can be waived). There are two problems with such a position. First, it parses the email far too selectively. The first paragraph of the email, attached to Plaintiff's Opposition, actually states: "I can accept service, however, it appears you have named the wrong entity. If you could amend the Complaint to properly name the parties I would appreciate it. Below are my clients['] comments on the correct entity. Also, pursuant to our contract with Venable, this case should have been filed with the American Arbitration Assoc."

Opp., Exh. 2 (Email) (emphasis added).  So it cannot be gainsaid that AMS <u>did</u> intend to compel arbitration.

Second, what Defendant did or did not do <u>after</u> the limitations period had already run is irrelevant.  As <u>Martinez</u> explained when faced with a similar argument about acts outside the limitations period:

> The plaintiff's argument is predicated on a fundamental misunderstanding of District of Columbia law. In the District of Columbia, an insurance company is estopped from raising a contractual limitations period as an affirmative defense "where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment." <u>Bailey</u>, 516 A.2d at 939 n.5 (citations omitted). According to the plaintiff, "the very fact that [the defendant] kept the claim open upon the expiration of the two year limitations period, and continued negotiating with [the] Plaintiff before and after the two year period ... constitutes deceptive lulling activity." Surreply ¶ 7. This is plainly wrong. The defendant's conduct *after* the expiration of the two-year period cannot constitute "lulling" for the purpose of estoppel, because actions taken in 2004 could not have prevented the plaintiff from initiating legal action before the contractual limitations period expired in 2003.

429 F. Supp. 2d at 58.  Similarly, here, what AMS did once the limitations period had run in Dec. 2009 is of no moment.  As a result, no reasonable jury could find that Defendant waived its reliance on the ADR clause.

## IV.  Conclusion

Because the Court finds that Plaintiff's claim is barred by the limitations provision in the ADR clause, the case will be dismissed.  An Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   October 7, 2011